Siíauck, J.
Statutes regulating the construction and maintenance of. fences between the lands of adjoining proprietors when used by both for the purpose of enclosing their lands, have long been in'operation in this state, and their provisions and effect have become quite familiar. But the judgment below in the present case implies the Ariew, that by the act of April 18, 1904, (97 O. L., 138) the general assembly has thought itself empowered to enact that one must submit to an imposition for the construction of his neighbor’s fence, even though his own lands are not otherwise enclosed and he makes no use whatever of the fence to whose construction he is required to contribute, and has no intention whatever of making such use thereof, and that by the act referred to the general assembly has exercised that authority. Some doubt as' to the intention of the legislature will survive a careful analysis of the statute. The first section, as amended by Ihe act referred to, being Section 4239, Revised Statutes, provides, “That the owners of adjoining lands shall build, keep up and maintain in good repair all partition fences between them in equal shares, unless otherwise agreed upon be *354 tween them, which agreement must be in writing and. witnessed by two persons * * Section 4242 provides that, “If any party neglects to build or repair a partition fence, or the portion thereof which he ought to build, or maintain, the aggrieved party may complain to the township trustees,” etc. Section 4243 provides that if he fails upon notice, to construct said portion, the trustees shall, upon the application of the aggrieved party, sell the contract to the lowest responsible bidder to furnish the labor and material and build such fence according to. the specifications to be proposed by the trustees, after advertising the same, etc. There are other provisions for reporting to the county auditor the cost of the proceeding', and the cost of the erection of the designated portion of the fence, for the record thereof, etc., and an express provision that they shall be collected as other taxes are collected. The act contains no definition of a partition fence which Avould necessarily include a fence constructed and maintained by one proprietor for his sole use and not used by the other in the enclosure of his lands. It would naturally be expected that an intention to inaugurate so radical a departure from previous legislative policies and so manifest a disregard of the commonly accepted views as to the rights of landowners, would be indicated by the use of language of an unequivocal character. The statute of the state had long applied by appropriate terms to a partition fence “dividing the enclosures of two or more persons.” But some purpose must have prompted the amendment of the statute now under consideration, and no conjecture as to that purpose seems more probable than that made by the *355 courts below. No other explanation of the amendment occurs to us or is suggested by counsel. But whatever the intention in fact of the general assembly, as indicated by the terms of the act, may have been with respect to this question, constitutional considerations seem to forbid the interpretation of the act which is implied in the proceedings of the township trustees and in the judgment under review. The powers of the imagination will be exhausted in vain to find a member of society who will be benefited by the imposition which is sought to be made upon the plaintiff, except Allen, the adjoining proprietor who desires to enclose his land. In pursuing inquiries of this character we need not be seriously concerned about forms if we correctly comprehend the substance of things. In the contemplation of the Bill of Rights, a legislative act to transfer title to a portion of the plaintiff’s lands- to its neighbor by compulsion, and without consideration, would not differ from one to assess its lands to an equivalent extent for his exclusive benefit. It would be neither more reprehensible npr less availing.
Upon this aspect of the case two propositions a.re urged in support of the judgment below. It •is said that the act construed as it was in the circuit court, is not an exercise of the right of eminent domain, but only the exercise of the power of levying a tax or assessment, and that these are essentially different powers. That differences between them exist is obvious, and that they are sometimes important is true, but that they are of no importance whatever in the present inquiry is made clear by three propositions which *356 are elementary in constitutional law. In the exercise of the right of eminent domain, property can be taken for a public use only. A special assessment can be made only in consideration of a special benefit conferred upon the owner of the property assessed or upon the property itself. The power to levy a general tax may be exercised only for the carrying out of governmental purposes which constitute the only function of the state. Enough upon this subject has been said in Reeves v. The Treasurer of Wood County et al., 8 Ohio St., 333, and Railroad Co. v. Keith et al., 67 Ohio St., 290.
In support of the judgment below we have the definite proposition that the act, as there construed, is a legitimate exercise of the police power which is confessedly within the constitutional grant of legislative power to the general assembly. Again the vain longing for conceptual definition of the police power is intensified. Counsel are obviously embarrassed by the realization that to the valid exercise of this power it is indispensable that every invasion of a private right must be vindicated by a consideration of the public weal. To meet that requirement, it is suggested that the purpose of the amended legislation is to prevent the occurrance of “devil’s lanes,” which are supposed to provoke neighborhood animosities, and in which live stock, especially horned cattle, are liable to be restrained and injured. Such lanes, instead of being provocative of neighborhood animosities, are indicative of such animosities already in a very high state of development. It v/ill be quite apparent that this conjecture falls far short of helpful suggestion when it is real *357 ized that such a lane can not possibly occur when the lands of one of the adjoining proprietors remain wholly without fence.
We do not follow counsel in the present case”, nor the circuit court, in a case cited, in a consideration of the extent of the lands within the state whose owners might be subjected to a like imposition under like circumstances in the view taken of this statute in the courts below. The larger it might appear to be, the more effectively it would divert attention from the really important aspect of the. case. In the opinion of those who framed and adopted our constitutions, and in accordance with the observation and experience of those who have happily enjoyed their protection, private rights in property are subject only to the limit of the public use or the public benefit. In determining the limits of the rights so vested and secured, surveyors’ instruments can not be profitably employed. The record informs us that the plaintiff in the orderly mode appointed seeks relief from a forbidden imposition. Further information is unnecessary. The experiences of courts which have departed from principles of obvious soundness, because the particular cases in which such departures were permitted were not otherwise important, have not been so happy as to invite repetition.
The judgments of the circuit court and common pleas court will be reversed and the demurrer to the petition will be overruled.

Judgment reversed.

Crew, C. J., Summers, Spear, Davis and Price, JJ., concur.